# United States Court of Appeals
## For the First Circuit

No. 13-1748

UNITED STATES OF AMERICA,

Appellee,

v.

KYVANI OCASIO-RUIZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jose A. Fuste, U.S. District Judge]

Before
Lynch, Chief Judge,
Souter,[*] Associate Justice,
and Stahl, Circuit Judge.

Anita Hill Adames for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, with whom
Rosa Emilia Rodríquez-Vélez, United States Attorney, and Francisco
A. Besosa-Martínez, Assistant United States Attorney, were on
brief, for appellee.

February 27, 2015

---

[*]     Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**SOUTER, Associate Justice.** Kyvani Ocasio-Ruiz was convicted of a number of crimes arising out of a carjacking and murder in Puerto Rico. The government's evidence at trial rested on the testimony of a cooperating witness, who testified that he, Ocasio-Ruiz, and four other co-conspirators (including Luis Maldonado-Castro) carjacked Joseph A. Seymour. His evidence was that, after interrogating Seymour on suspicion of snitching to a rival drug gang, the group drove to a secluded place, with Ocasio-Ruiz and Maldonado-Castro sitting on opposite sides of Seymour in the back seat of a truck. The witness (who was in the back of the truck) heard one gunshot shortly after he heard Ocasio-Ruiz ask Maldonado-Castro for his pistol.

At trial, Ocasio-Ruiz sought to introduce the testimony of Maldonado-Castro's mother. Maldonado-Castro had been killed before trial, but his mother was prepared to testify that, shortly before his death, he came to her in her house and confessed that he alone had killed Seymour. Specifically, the mother proffered that her son said that "he was by himself all the time."

The district court refused to admit the mother's testimony, concluding that it was not hearsay admissible under Fed. R. Evid. 804(b)(3), which permits the admission of hearsay declarations against interest of an unavailable witness only when sufficient corroboration exists for the hearsay itself. The district court found "absolutely no corroborating circumstances."

-2-

We reverse.  The district court's finding was erroneous, as this court has recognized that statements against interest made to a close relation bear at least some corroborating indicia of truthfulness.  And because the error is not harmless, we vacate the convictions as to all counts and remand the case to the district court.

I.

Ocasio-Ruiz was indicted and brought to trial on four counts: (1) he and his co-defendants knowingly and intentionally conspired, with intent to cause death and serious bodily harm, to take an automobile from Seymour by force, violence, or intimidation, resulting in Seymour's death; (2) he and his co-defendants aided and abetted each other, intending to cause death and serious bodily harm, knowingly and wilfully to take an automobile from Seymour by force, violence, or intimidation, resulting in Seymour's death; (3) he and his co-defendants aided and abetted each other in knowingly using, brandishing, and discharging a firearm during a carjacking; and (4) he and his co-defendants aided and abetted each other in wilfully, intentionally, deliberately, and maliciously, and with premeditation causing Seymour's death by use of a firearm during the perpetration of the robbery.

Shortly after the government concluded its case-in-chief (resting on the cooperating witness's testimony), Ocasio-Ruiz called Maldonado-Castro's mother to testify.  Following an

objection, the mother proffered her testimony, as recounted earlier.

After considering the parties' legal memoranda, the district court excluded the mother's testimony as inadmissible hearsay. The district court cited Rule 804(b)(3), and found two conditions of admissibility satisfied: that the declarant (Maldonado-Castro) was unavailable and that the confession was against the declarant's interest. As to the third condition, however, it found "that there [are] absolutely no corroborating circumstances that clearly indicate the trustworthiness of [the confession]." It added, "[t]here [are] simply no corroborating circumstances." Accordingly, it excluded the mother's testimony.[1]

The jury found Ocasio-Ruiz guilty on all four counts. The district court sentenced him to life in prison on counts one, two, and four, and ten years in prison on count three, all to run consecutively.

---

[1]    Ocasio-Ruiz also proffered the testimony of a minister to corroborate Maldonado-Castro's confession. The minister met Maldonado-Castro approximately two weeks prior to the confession, and based on their interaction that night (which included the cleric's declaration to Maldonado-Castro that the angel of death hovered over him), the minister believed that Maldonado-Castro had accepted God. Ocasio-Ruiz viewed this testimony as establishing Maldonado-Castro's guilty state of mind, which Ocasio-Ruiz viewed as some corroboration of Maldonado-Castro's confessing a few weeks later to his mother. The district court found no corroboration in the cleric's testimony and found it otherwise irrelevant. We do not find this conclusion to be an abuse of discretion, although on the face of the record, this is not the only evaluation reasonably possible.

II.

Ocasio-Ruiz's principal contention is that the district court committed reversible error in its analysis of the admissibility of the testimony of Maldonado-Castro's mother.

A.

Our enquiry into the claim of error goes to the hearsay exception for statements against interest provided by Federal Rule of Evidence 804(b)(3). Under this Rule, a statement is not excluded by the ordinary rule against hearsay if the declarant is unavailable as a witness and if the following conditions are met:

> (A) a reasonable person in the declarant's position would have made [the statement] only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and
>
> (B) [the statement] is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

Fed. R. Evid. 804(b)(3).

"Rule 804(b)(3) is founded on the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." Williamson v. United States, 512 U.S. 594, 599 (1994). To guard against the possibility of fabrication, however, a clear degree of corroboration is required. See generally United States v. Barrett, 539 F.2d 244, 249-53 (1st Cir.

-5-

1976) (tracing the history and purpose of the corroboration requirement). Such corroboration "is not independent evidence supporting the truth of the matters asserted by the hearsay statements, but evidence that clearly indicates that the statements are worthy of belief, based upon the circumstances in which the statements were made." United States v. Barone, 114 F.3d 1284, 1300 (1st Cir. 1997). This requisite indication "is not unrealistically severe but does go beyond minimal corroboration." United States v. Mackey, 117 F.3d 24, 29 (1st Cir. 1997) (citation and internal quotation marks omitted).

The district court's finding that there were "absolutely no corroborating circumstances" is incorrect as a matter of law, as shown by cases in which this court has repeatedly recognized that a close family relationship between a declarant and recipient of a statement against interest is an indication of truthfulness. In Barone, we applied this principle to a statement made to the declarant's sister in a non-custodial setting. See 114 F.3d at 1301. Much more recently, we applied it to a statement made to the declarant's cousin. United States v. Monserrate-Valentín, 729 F.3d 31, 53 (1st Cir. 2013). Indeed, in Monserrate-Valentín, the familial context was considered not only competent evidence of truthfulness but sufficient of itself to corroborate the statement. Id. And we have even extended the principle of relationship as competent corroborative evidence to a non-familial acquaintance,

-6-

the declarant's fellow inmate, in United States v. Pelletier, 666 F.3d 1, 8 (1st Cir. 2011).  While these cases do not hold that making a statement against interest to a close relation is a sufficient corroborating fact as a matter of law under Rule 804(b)(3), our affirmation of district court cases holding it competent evidence (and, in one instance, accepting it as sufficient in fact) reflects our acknowledgment that a familial tie has corroborative value.  It follows that the circumstances of the statement in this case, where the declarant was speaking to his mother, and doing so in her house in the absence of any stimulus from any police activity, provide some corroboration.  Because the district court did not consider our relevant case law and its application to these facts, it erred as a matter of law in finding "absolutely no corroborating circumstances."

We are mindful, of course, that, under the law of this circuit, a district court's judgment about corroboration will not be set aside lightly.  See Barrett, 539 F.2d at 253 ("Trial judges will have to make an assessment case by case and in attempting to understand the standard may be aided by the legislative comments quoted above.  In cases that are open to reasonable differences, this court is unlikely to substitute its judgment for that of the district court."); Barone, 114 F.3d at 1301 ("In the final analysis, the Rule 804(b)(3) corroboration inquiry is concerned only with the admissibility of hearsay evidence based upon its

trustworthiness, a determination committed to the sound discretion of the district court."); Mackey, 117 F.3d at 29 ("[T]he district court has a substantial degree of discretion in making this important finding on trustworthiness." (internal quotation marks omitted)); Pelletier, 666 F.3d at 9 ("[W]e respect the district court's determination absent clear abuse.").  But the district court did not exercise its discretion here.  Its judgment was not that the probative force of some corroboration existed but was too minimal to meet the standard required by Rule 804(b)(3).  Rather, it found no corroborating circumstances and thus proceeded to exclude the mother's testimony without any evaluation.  Thus, there is no district court judgment call to which we could defer here, only a factual finding that was erroneous as a matter of law, with the consequence that the district court made no analysis of the corroborative underpinnings of the proffered testimony under this court's law.

B.

Having found error, our next enquiry is whether it warrants reversal, that is, whether the error is harmless.  We will not reverse if it is highly probable that the error did not contribute to the verdict, United States v. Delgado-Marrero, 744 F.3d 167, 179 (1st Cir. 2014), which Judge Boudin has explained to mean that a conviction will be upheld if it is highly probable that the result would have been the same, United States v. Vigneau, 187 F.3d 82, 86

(1st Cir. 1999); see also United States v. Sepúlveda, 15 F.3d 1161, 1182 (1st Cir. 1993) (discussing factors relevant to determining harmlessness). Because the issue was preserved, the burden of persuasion rests on the government, Delgado-Marrero, 744 F.3d at 179, which has pressed no argument of harmlessness before this court.

In this case, the harmlessness enquiry comprises two successive questions. First, was the error harmless because it is highly probable that, even with the application of governing case law, the mother's testimony would have been excluded? Second, was the error harmless because, even if the mother's testimony had been admitted, it is highly probable that Ocasio-Ruiz would have been convicted on all four counts? We answer no to both questions.

As to the first, we cannot infer a high probability that the mother's testimony would have been excluded; there is sufficient evidence from which the district court could have concluded, in the exercise of its discretion, that the hearsay was sufficiently corroborated. To begin with, as we said, our cases acknowledge that making a statement against interest to a close relation is a competent corroborating fact. And familial context is not the only such fact in this case. The nature of the statement (a confession to murder could subject the declarant to severe penalty), the detail of the proffer (which included several admissions that Maldonado-Castro acted alone), the location in which it was made (a

non-custodial, family setting) provide further corroborating elements. Again, this is not to say that the hearsay in the mother's testimony must be deemed corroborated, and thus be admitted, in this case. We cannot say that, on fully weighing the facts on remand (not necessarily limited to those just mentioned), the district court will not have grounds to conclude, in the exercise of its discretion, that the mother's testimony lacks sufficient corroboration.[2] Such is the nature of discretionary judgments. For present purposes (including the preserved nature of the claim and the government's waiver of a harmlessness argument), however, it need only be established that the district court could have exercised its discretion to admit the mother's testimony. Because that is so, we could not find the error harmless without more.

As to the second question, we cannot find it to be highly probable that the mother's testimony would not have altered the jury's verdict. As noted earlier, the mother's proffer was that her son confessed to committing the murder *alone*, that "he was by himself all the time." She pressed him on this point, and he

---

[2] While the district court appeared skeptical of the mother's credibility because she waited many years before coming forward, "the credibility of the witness who relates the statement is not a proper factor for the court to consider in assessing corroborating circumstances. To base admission or exclusion of a hearsay statement on the witness's credibility would usurp the jury's role of determining the credibility of testifying witnesses." Fed. R. Evid. 804, advisory committee's note (2010 amendments); see also Barone, 114 F.3d at 1300-01.

repeated that he acted alone. This flatly contradicts the testimony of the government's cooperating witness, who gave the only evidence tying Ocasio-Ruiz to the carjacking and murder. Accordingly, if the mother's testimony had been admitted, the jury would have been forced to make a credibility determination. And if the jury had found Maldonado-Castro's mother and the hearsay admission more credible than the cooperating witness, then Ocasio-Ruiz could well have been acquitted on all counts as having been uninvolved in the murder or carjacking or not involved to the requisite degree of clarity. We may wonder about such a possibility, but we have no evidentiary basis to exclude it as a matter of fact, and cannot exclude it as a matter of law.

Given these circumstances, we cannot reach a conclusion to the degree of a high probability that the erroneous evidentiary ruling did not contribute to the verdict. We vacate Ocasio-Ruiz's convictions accordingly.

                                III.

We make one final observation. Although, after vacating all the convictions, we need not consider any other errors Ocasio-Ruiz raises on appeal, we address one because it may recur on remand. Ocasio-Ruiz argues that he was improperly sentenced to life in prison on count one, which was essentially conspiracy to commit carjacking. Although the carjacking statute itself carries a statutory maximum sentence of life in prison if death results, 18

U.S.C. § 2119, the federal conspiracy statute carries only a five year maximum, id. § 371. Accordingly, Ocasio-Ruiz argues that he should have received no more than a five-year sentence on count one.

We agree with Ocasio-Ruiz. Although count one in the indictment cites the substantive carjacking statute, and this statute provides for a life sentence if, as here, death results, id. § 2119, the narrative portions of the indictment make it clear that count one charged only conspiracy, not a substantive crime. And, as Ocasio-Ruiz correctly observes, the general conspiracy statute under which he was charged carries a five year maximum sentence. Id. § 371. By contrast, Congress has created some specific conspiracy crimes with parallel sentencing, that is, with the statutory maximum sentence for a conspiracy crime following that of the underlying substantive offense. See, e.g., 21 U.S.C. § 846 (drug conspiracy); 18 U.S.C. § 1117 (conspiracy to commit homicide). Because, however, Ocasio-Ruiz was charged under the general federal conspiracy statute, which does not itself provide for parallel sentencing, he should not have been sentenced to more than five years in prison on count one.

IV.

The judgment of the district court is reversed and vacated, and the case is remanded.